# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **DONNA L. PRESLEY,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:10CV00027 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Gregory R. Herrell, Arrington Schelin & Herrell, P.C., Bristol, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III, Jordana Cooper, Assistant Regional Counsel, and Allyson Jozwik, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff Donna L. Presley filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claims for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401-433 (West 2003 & Supp. 2010). Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g).

Presley filed for benefits on March 15, 2007, alleging she became disabled December 31, 2006. Her claim was denied initially and upon reconsideration. Presley received a hearing before an administrative law judge ("ALJ"), during which Presley, represented by counsel, and a vocational expert testified. The ALJ denied Presley's claim, and the Social Security Administration Appeals Council denied her Request for Reconsideration. Presley then filed her Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment and have briefed the issues. The case is ripe for decision.

II

Presley was 48 years old at the time of the hearing, making her a younger person under the regulations. 20 C.F.R. § 404.1563(c) (2010). She is now 52 years old. Presley has an eleventh grade education. She has worked in the past as a waitress, cashier, convenience store clerk, and food preparation worker. She is married and has two adult sons. She claims she is disabled due to depression, difficulty sleeping, poor concentration, crying spells, anxiety, loss of interest in activities, and lower back pack that radiates to the left leg.

Presley presented to the emergency room in December 2006 complaining of acute lower back pain. Motor examination was normal and there was no evidence

of reflex or sensory deficits. X rays showed only slight disc space narrowing and degenerative spur formation.

In January 2007, Presley saw James M. Gardner, MD, complaining of anxiety. She reported having stress and trouble sleeping. Dr. Gardner recommended that Presley continue taking Trozodone and prescribed Klonopin for anxiety and insomnia.

In March 2007, Presley saw a neurosurgeon because she had suffered a possible seizure the previous month. She was prescribed Paxil, which is used to treat depression and anxiety. An MRI was unremarkable except for mild chronic white matter ischemic disease, and an EEG was "essentially normal." (R. at 167.)

In April 2007, Presley was in an automobile accident and sustained broken ribs. She was charged with driving under the influence due to prescription drugs. A few days later, Presley was admitted to the hospital with depression. She was discharged three days later feeling "100% better." (R. at 185.) At the time, she was taking Ativan and Paxil for depression and anxiety, but her doctor wanted to move her off the Ativan eventually. She then began treatment at her local mental health center, seeing Gail Herring, RN, and Jeff Gee, MD. Dr. Gee diagnosed her with a moderate recurrent depressive disorder.

In May 2007, Presley saw Dr. Gardner for a knot in her right leg. She was prescribed morphine for her back and was advised to follow up at three-month

intervals for back pain and generalized anxiety disorder, which was being treated with Xanax. In June 2007, Presley saw Dr. Gee and reported that she had some improvement. At a follow-up appointment with Dr. Gardner in August 2007, Presley reported that her anxiety was improving and Dr. Gardner noted that medication alleviated Presley's symptoms and that her activities were only moderately limited.

In May 2007, Howard S. Leizer, Ph.D., completed a psychiatric review technique and Robert McGuffin, M.D., completed a physical functional capacity assessment. Joseph I. Leizer, Ph.D., completed a psychiatric review technique in July 2007.

In October 2007, Presley followed up with Dr. Gee. She requested detoxification services because she thought she might have been dependent on opiates, but she told Dr. Gee she was not taking opiates at the time. Two weeks later, Dr. Gardner provided Presley with morphine for her back and Xanax for her anxiety. He described her anxiety as moderately limiting.

Presley saw John W. Ludgate, Ph.D., in January 2008 for a consultative psychological evaluation. Dr. Ludgate administered the Minnesota Multiphasic Personality Inventory – Second Edition ("MMPI-2") and the Structured Inventory of Malingered Symptomatology ("SIMS"). He indicated that the testing was consistent with major depression, generalized anxiety disorder, and panic disorder.

Dr. Ludgate then completed an assessment outlining Presley's ability to do work-related activities. He reported that Presley had poor ability to maintain attention and concentration, deal with work stresses, relate to co-workers, deal with the public, carry out detailed or complex job instructions, and behave in an emotionally stable manner. He reported that Presley had fair ability to demonstrate reliability, relate predictably in social situations, follow work rules, use judgment, interact with supervisors, and carry out simple instructions.

In February 2008, Presley saw Dr. Gee and was hinting at getting more Ativan. Dr. Gee stopped Presley on Ativan. Later that month, Presley reported feeling improved. However, in March 2008, Presley was treated at a detoxification facility.

After reviewing Presley's records, the ALJ determined that she had severe impairments of chronic lower back pain, generalized anxiety disorder, and depression but that none of these conditions, either alone or in combination, met or medically equaled a listed impairment. Taking into account Presley's limitations, the ALJ determined that Presley retained the residual functional capacity to perform light work that does not involve repetitive bending or lifting and does not require interaction with co-workers or the public. The ALJ concluded that although Presley was unable to perform her past work, she was able to perform

work that existed in significant numbers in the national economy and was therefore not disabled under the Act.

Presley argues the ALJ's decision is not supported by substantial evidence because the ALJ did not properly weigh all the evidence presented, did not comply with the regulation setting out the technique for assessing disabilities caused by mental disorders, and did not present an appropriate hypothetical to the vocational expert. For the reasons below, I disagree.

III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing DIB claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could

return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4) (2010). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.* at 869.

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinbarger*, 538 F.2d 1054, 1956-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Presley argues that the ALJ failed to consider all of the evidence presented to him, failed to properly evaluate medical opinion evidence and consider laboratory tests, failed to comply with the regulations governing evaluation of mental impairments, and failed to present a proper hypothetical question to the vocational expert.

Presley first argues that the ALJ failed to address the fact that Presley sought mental health treatment at Cumberland Mountain Community Services in April 2007 for depression and other mental health symptoms and was diagnosed with a recurrent major depressive disorder. Although the ALJ did not detail Presley's treatment from Dr. Gee, he did note that Presley had been seen at Cumberland Mountain Community Services since April 2007. The ALJ is not required to recite the entire medical record in detail. There is no indication the medical evidence relating to Presley's treatment at Cumberland Mountain Community Services was ignored or improperly discounted.

Presley then argues that the ALJ improperly discounted the opinion of Dr. Ludgate. Although Dr. Ludgate was not a treating physician, and therefore his opinion is not afforded controlling weight, the ALJ is bound to consider and evaluate his medical opinion.[1] 29 C.F.R. 404.1527(b). Presley argues that the ALJ

---

[1] Presley did not seek assessments from Dr. Gardner or Dr. Gee, and therefore no treating physician has provided an opinion about Presley's mental residual functional capacity.

erred by dismissing Dr. Ludgate's assessment on the bases that no mental status evaluation was performed and that the assessment contained no objective medical evidence. However, the ALJ did afford some weight to Dr. Ludgate's opinion; he found that Presley had moderate, rather than mild, difficulty maintaining social functioning. Additionally, the ALJ did not report that no mental status evaluation was performed, but rather, that no *detailed* evaluation was performed. He did not report that no objective medical evidence was contained in the record, but rather, that it was not cited in the assessment as support for Dr. Ludgate's conclusion.

The ALJ also reasoned that Dr. Ludgate's assessment conflicted with reviewing psychologists who found no severe mental impairment, no more than mild restriction in activities of daily living, and no more than mild difficulty maintaining social functioning. Presley argues that the reviewing psychologists did not review all of the mental health records and did not see Dr. Ludgate's report because the report was completed several months after the reviews. Dr. Howard S. Leizer completed a psychiatric review technique in May 2007. Based on his notes, it appears that he did not have access to Presley's most recent records reflecting her April hospitalization. However, the notes of Dr. Joseph Leizer, who completed a psychiatric review technique in July 2007, indicate that he reviewed her medical records through June 2007. Additionally, the ALJ found that Dr. Ludgate's opinion conflicted with the records from Presley's treating mental health

professional, Dr. Gee. The ALJ is entitled to weigh conflicting evidence, *Seacrist*, 538 F.2d at 1956-57, and appropriately afforded Dr. Ludgate's assessment less weight, in part because it conflicted with the opinions of other medical professionals. Presley's argument that the ALJ did not properly consider Dr. Ludgate's assessment has no merit.

Presley's third argument is that the ALJ failed to offer findings regarding Presley's residual functional mental capacity even though he found that she had severe mental impairments. When a claimant is found to have a severe impairment that does not meet any listing, the ALJ must then assess the claimant's residual functional capacity. 20 C.F.R. § 404.1520(d)(3). Presley argues that the ALJ failed to follow that directive.

The ALJ did assess Presley's residual functional capacity; he limited Presley to work not requiring interactions with coworkers or the public, as a result of her moderate difficulty maintaining social function. The limitation was supported by Presley's medical records and her testimony. For example, Presley testified that she became nervous and anxious in crowds and around people. To the extent Presley argues that more limitations should have been imposed, she fails to identify specific limitations and the medical evidence to support their imposition.

Presley's final argument is that the ALJ failed to pose a proper hypothetical question to the vocational expert who testified at the hearing. Particularly, she

-10-

argues that the ALJ should have informed the vocational expert that Presley had moderate difficulty maintaining social functioning. However, Presley's argument is without merit. Although the ALJ did find that Presley had moderate difficulty maintaining social functioning, the functional limitation resulting from that finding was that Presley could not do work requiring interactions with coworkers or the public. The ALJ properly included that limitation in the hypothetical posed to the vocation expert.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: August 22, 2011

/s/ James P. Jones
United States District Judge

-11-
Case 1:10-cv-00027-JPJ-PMS   Document 18   Filed 08/22/11   Page 11 of 11   Pageid#: 398